UNITED STATES of America, Plaintiff,

v.

William D. GRESSINGER et al., Defendants.

No. 66–312–Civ–CF.

United States District Court S. D. Florida.

March 25, 1966.

---

William A. Meadows, Jr., U. S. Atty., Miami, Fla., for the United States.

Edmond J. Gong, Miami, Fla., and Herbert J. Miller, Jr., John J. Cassidy, Miller, McCarthy, Evans & Cassidy, Washington, D. C., for defendants.

## ORDER

FULTON, District Judge.

This cause came on for a hearing on the Complaint and Motion For Preliminary Injunction filed by the United States and a Motion To Dismiss filed by the Defendants and the Court having considered testimony, points and authorities and having heard argument of counsel, the Court makes the following

## FINDINGS OF FACT

1. Defendants are a partnership of four brothers which currently and for the past several years have been engaged in the business of farming and marketing fresh produce in the Belle Glades, Florida, area.

2. The Florida State program designed to limit the marketing of celery, which had been in effect for several years, was declared unconstitutional by the Florida Supreme Court on May 5, 1965. Rabin v. Connor, 174 So.2d 721.

3. On July 9, 1965, the Secretary published in the Federal Register a notice of proposed rule making under the Agricultural Marketing Agreements Act of 1937.

4. Public hearings on the proposed marketing order were held in Orlando, Florida, on July 28 to July 30, 1965.

5. After a hearing, the Secretary issued a recommended decision on September 30, 1965, which *inter alia* proposed the issuance of Base Quantities and Marketable Allotments for celery and providing that producers who had made firm and substantial commitments by that date would be entitled to consideration.

6. Defendants had in fact made substantial investments by September 30, 1965, having purchased a substantial amount of equipment and having actually planted several seedbeds.

7. The Secretary issued his decision on October 28, 1965, and pursuant thereto a referendum was held November 1–3, 1965. The proposed marketing order was published in the Federal Register November 13, 1965, and became effective on November 15, 1965.

8. On November 16, 1965, the Secretary appointed all of the members and alternates of the Florida Celery Advisory Committee to be members and alternates of the Florida Celery Committee. The Florida Celery Advisory Committee was the body charged with administering the Florida State program controlling production of celery which program was de-

clared unconstitutional in Rabin v. Connor, 174 So.2d 721.

9. The Florida Celery Committee held its organizational meeting on November 18, 1965, at which meeting by-laws were adopted and subcommittees appointed, including the Marketing Sub-committee. The Committee also forwarded to the Secretary administrative rules and regulations to govern the proceedings of the Florida Celery Committee and decided that any person desiring to market celery in the 1965–66 marketing season would be required to file an application with the Florida Celery Committee on or before December 1, 1965.

10. Defendants submitted an application to the Florida Celery Committee on November 30, 1965. The Marketing Sub-committee held meetings on December 6, 7, 10, 13, and 17, 1965.

11. The administrative rules proposed by the Florida Celery Committee were approved and published by the Secretary on December 15, 1965.

12. At a meeting of the Florida Celery Committee on December 21, 1965, Defendants were informed that the Florida Celery Committee had established Defendant's Base Quantity for production of celery at 87,920 crates.

13. Defendants were notified officially on January 9, 1966, of the amount of their Base Quantity and further notified that the Base Quantity was retroactive to November 1965 and was reduced to 75,428 crates by the application of the uniform percentage of 86.327.

14. At a time when no production or marketing controls were in effect, Defendants had in fact commenced the production of celery, planning to produce 350,000 crates of celery in the 1965–66 marketing season.

15. On January 15, 1966, Defendant WILLIAM D. GRESSINGER went to the office of George Talbott who is General Manager of the Florida Fresh Produce Exchange, Florida Celery Advisory Committee, and the Florida Celery Committee, and requested certain facts, documents and information upon which the actions allocating Marketing Allotments and Base Quantities had been taken. This request was confirmed by a letter to Mr. Talbott by Gressinger's counsel dated January 19, 1966. An answer to this request was not received by Gressinger's counsel until March 4, 1966, at which time some, but not all, of the documents were made available to Defendants.

16. On February 28, 1966, Defendants filed a 15(A) Petition with the Secretary of Agriculture seeking a review of the administrative action taken by the Secretary and on the same date filed an Application For Interim Relief requesting that the effectiveness of the Order be stayed. The Application For Interim Relief was denied by the Secretary on March 8, 1966.

17. On March 15, 1966, an administrative hearing on the Defendants' Petition and the Petition of Robert E. Watson, Choate Farms, and Harold J. Rabin was commenced in West Palm Beach and completed on March 18, 1966.

18. At the time Defendants were making preparations for production of celery, planting seedbeds, and purchasing equipment, there was no State or Federal marketing order in effect and the notice of proposed rule making dated July 9, 1965, was neither binding nor controlling.

19. There was nothing in the hearing held on the proposed rule making on July 28, 1965, which was final or conclusive or that reasonably could put anyone on notice that controls were to be instituted.

20. The action of the Secretary in issuing his recommended decision on September 30, 1965, as well as the decision with respect to the proposed order and referendum order published October 28, 1965, and the publication of the proposed marketing order on November 13, 1965, were nothing more than declarations of intent and were not final. There was nothing conclusive at this time, and there is nothing there that would prevent, as a matter of law or otherwise, one who

wanted to plant celery from planting or marketing such celery, because at that time there was no order establishing Base Quantities.

21. The Court finds, that in determining whether or not Defendants acted in good faith in investing money to produce celery for the 1965–66 season, it will take into account the decision of the Florida Supreme Court dated May 5, 1965, which resolved a controversy which had existed in this area with respect to the control of celery production. The Court finds that Defendants acted in good faith in planting celery and purchasing equipment and spending the additional sums necessary to produce celery for the 1965–66 season and that Defendants as farmers had reached the point of no return no later than November 25, 1965.

22. As to the Application filed by Defendant WILLIAM D. GRESSINGER on November 30, 1965, with the Florida Celery Committee, the Application is inadequate and incomplete but it was filed by a farmer and there was no showing that he had any expertise or assistance in preparing the Application. The Court further finds that there is nothing in the Application which indicates that Defendants have changed their position between the time of filing the Application and now, nor that after filing the Application they did not act in good faith. Hence they are not precluded from protection against the enforcement of this Order.

23. The total Base Quantities allowed by the Florida Celery Committee on December 21, 1965, were 8,881,583. The Florida Celery Committee is composed of individuals who collectively own over 90% of the Base Quantities allowed. A. Duda & Sons, a celery producer, was allocated a Base Quantity by the Florida Celery Committee of 2,176,000 crates. The same A. Duda & Sons has at least three (3) representatives on the Florida Celery Committee.

24. The Florida Celery Committee and the Florida Celery Advisory Committee are composed of the same individuals and the Florida Celery Advisory Committee operated under the State Statute which was ruled unconstitutional by the Supreme Court of Florida.

25. The Court finds that it would run counter to the equitable jurisdiction of this Court to take any action to enjoin the Gressingers with whose action the Court finds no fault.

26. As of the date of this hearing Defendants have planted and have growing approximately 150 acres of celery from which can be harvested approximately 105,000 crates which, at the present price of $2.50 per crate, represents $262,500.00 worth of celery which would rot in the ground and be a total loss to Defendants, if the Court granted the relief requested by the UNITED STATES.

27. There has been no showing of countervailing injury to the public interest or to the other celery growers if Defendants be permitted to harvest and market the celery already planted.

Therefore, the Court makes the following

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties to this cause and has the power to grant or deny the equitable relief requested in the Court's discretion under established equitable principles.

2. The power of the federal government to regulate the marketing of celery through interstate commerce is not in dispute. Neither is it disputed that the federal Constitution guarantees to citizens the right to engage in any business that does not harm the public. It is conceded that the Constitutional right to engage in business involving interstate commerce is subject to the sovereign power of the federal government to preserve and protect the public health, safety, morals and welfare; but that power may not be exercised capriciously or unreasonably.

3. The Court is not limited to granting the relief set forth in the Stat-

332

ute but may follow settled equitable principles in granting or denying relief.

 4. The Defendants would be irreparably injured if the Court were to enter an order enjoining them from marketing celery.

5. To enforce the Secretary's order against the Defendants under the circumstances and conditions of this case would be inequitable and unjust and would impose penalties and large financial losses in great disproportion to any benefit to the public and other celery growers.

Wherefore, it is by the Court this 23rd day of March, 1966, ordered that the Motion by the UNITED STATES for Preliminary Injunction be and the same is hereby denied without prejudice to reapply when the administrative process has been completed.